Gerald Jay Pomerantz, Esquire (gjp4982)   Attorney for Plaintiff
21 S. 12th Street
7th Floor, Stephen Girard Building
Philadelphia, PA    19107
(215) 569-8866
gjpomlaw@hotmail.com

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PONSFORD P. DOE**<br>**6831 Guyer Avenue**<br>**Philadelphia, PA   19142**<br><br>vs.<br><br>**APRIA HEALTHCARE GROUP INC.**<br>t/d/b/a Apria Healthcare<br>**26220 Enterprise Court**<br>**Lake Forest, CA    92630** | CIVIL ACTION<br><br><br><br>NO.<br><br><br><br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

### PARTIES

1.  Plaintiff, PONSFORD P. DOE, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 6831 Guyer Avenue Philadelphia, PA 19142,

2.  Defendant, APRIA HEALTHCARE GROUP, INC., t/d/b/a Apria Healthcare, (hereinafter "APRIA"), is a corporation engaged in an industry affecting commerce with locations throughout the United States and locally with a plant operation at 16 Creek Pkwy, Upper Chichester, Pennsylvania.

## JURISDICTION

3. The causes of action set forth herein arise under of Civil Rights Act of 1866 and §1981 of the Civil Rights Act of 1870, 42 U.S.C. §1981 ("§1981")

4. The District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and §1343.

5. At all times material hereto, Defendant acted through its authorized agents, servants, and/or employees who in turn were acting within the scope of their employment with Defendant and in furtherance of Defendant's business.

6. At all times material hereto, Plaintiff, an African-American was a member of a protected class.

## FACTS

7. In 2010 Plaintiff began working for Defendant as a "temp" employee and it is believed and therefore alleged that he was hired as a full time employee after his work performance was observed and judged to be deserving of a full time position with the benefits afforded by Defendant.

8. Plaintiff was subjected to discrimination by APRIA's supervisory personnel who engaged in discriminatory action at the aforementioned work place including but not limited to:

   (a) Plaintiff's white supervisor did not permit non-white employees to use the bathroom during work hours other than during break time without special permission while white employees were permitted free access without having to beg permission to perform necessary bodily functions.

   (b) Plaintiff's white supervisor reprimanded non-white employees for speaking during work hours but white employees were permitted to talk and/or were joined in conversation by white supervisors.

(c)   Plaintiff's white supervisor permitted white employees to clock in before changing into work gear while non-white employees were required to clock in after changing.

9.   In or about April 2010 Plaintiff was hired as a full time employee by Defendant.

10.   As a full time employee Plaintiff felt more comfortable and therefore complained of the discriminatory behavior to his supervisor, and was told that if he didn't like the rules that he should leave.

11.   Plaintiff raised the issue several times but always received the same answer, and no change in the discriminatory behavior took place, nor did upper management, who was made aware, take any steps to correct the illegal treatment.

12.   On or about November 2010, Plaintiff was called a "monkey" and "my monkey" by a white coworker; supervisors were informed of the racial epithet but no action was taken that indicated that the outrageous discriminatory behavior was not to be tolerated in the workplace.

13.   In or about June 2011, Plaintiff filled out a computerized workplace survey where he again complained of discriminatory treatment which also included a concern of unequal training and lack of advancement opportunities.

14.   In or about July 2011, Plaintiff believes and therefore avers, that as a result of his survey comments as well as the quality of the work he performed, he was given greater job responsibility which required training and entailed handwritten record keeping.

15.   Plaintiff believes and therefore avers that he was at that time the only black employee to be placed in this position.

16.   Defendant's employees continued to engage in discriminatory behavior on the basis of race, and Plaintiff continued to periodically raise the issue with his superiors and supervisors.

3

17. On or about September 4, 2012, Plaintiff was called into the supervisor's office, where he was informed that he had made record-keeping mistakes and that he was discharged.

18. Plaintiff requested to see the alleged mistakes, which would have to have been part of the original alleged erroneous paperwork required in the record-keeping attendant to the performance of the particular assigned task.

19. Plaintiff's request to see the paperwork was denied, and he was told by Defendant's employees that if he didn't leave the premises promptly and without further inquiry the police would be called.

20. It is believed and therefore averred that the failure by Defendant to investigate and act to correct episodes of harassment and abuse of Plaintiff by another of Defendant's employees was racially motivated.

21. Defendant provided no documentation nor posted information on how to report discriminatory behavior when requests for remediation to local management are ignored.

22. It is believed and therefore averred that the basis of termination of Plaintiff was a pretext and that the true reason for their actions was motivated by Plaintiff's race.

23. Defendant, by the above discriminatory and wrongful acts, violated the Civil Rights Act of 1866.

24. As a direct and proximate result of Defendant's discriminatory and wrongful conduct, set forth above, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings, loss of earning capacity, loss of benefits, pain and suffering, upset, emotional anguish, loss of life's pleasures, attorney's fees and costs.

## COUNT I - HOSTILE WORK ENVIRONMENT

25.     Defendant's conduct by and through its agents and/or employees created a hostile work environment in which black employees were subject to severe and pervasive harassment and discrimination on the basis of race.

## COUNT II - UNLAWFUL TERMINATION

26.     It is believed and therefore averred, that Defendant's termination of Plaintiff was a pretext and was actually motived by Plaintiff's race in violation of Civil Rights Act of 1866 and §1981 of the Civil Rights Act of 1870, 42 U.S.C. §1981 ("§1981")

## COUNT III - RETALIATION

27.     In the alternative, it is believed and therefore averred that Defendant's termination of Plaintiff's employment was in retaliation for Plaintiff's complaints regarding ongoing discriminatory conduct.

## RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in favor of plaintiff and against defendant;

(a)     declaring defendant's actions to be in violation of Civil Rights Act of 1866 and §1981 of the Civil Rights Act of 1870, 42 U.S.C. §1981 ("§1981")

(b)     awarding plaintiff reinstatement to an appropriate position with defendant;

(c)     awarding compensatory damages to plaintiff to make plaintiff whole for all lost earnings, past and future, which plaintiff has suffered as a result of defendant's improper and discriminatory treatment, including, but not limited to, past and future wages, lost earning capacity, pension, and other lost benefits;

(d)     awarding compensatory damages to plaintiff for emotional upset, mental anguish, loss of life's pleasure, and pain and suffering;

(e)    awarding punitive damages to plaintiff;

(f)    awarding plaintiff costs of this action, together with reasonable attorneys' fees;

(g)    awarding plaintiff such other damages as are appropriate under §1981; and, granting such other further relief as the Court deems appropriate.

_____
GERALD JAY POMERANTZ, ESQUIRE
Attorney for Plaintiff