IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PONSFORD P. DOE,                    :    CIVIL ACTION
                                    :    No. 13-4204
          Plaintiff,               :
                                    :
     v.                             :
                                    :
APRIA HEALTHCARE GROUP INC.,        :
                                    :
          Defendant.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        April 10, 2015

        Plaintiff Ponsford P. Doe brings this race
discrimination action against his former employer, Defendant
Apria Healthcare, Inc. Plaintiff claims his employment was
terminated on the basis of his race, in violation of 42 U.S.C.
§ 1981. In addition, he claims Defendant retaliated against him
for complaining of Defendant's alleged racial discrimination in
the workplace, also in violation of § 1981. Defendant has moved
for summary judgment and, for the reasons that follow, the Court
will grant the motion in part and deny it in part.

I.   **FACTUAL BACKGROUND**[1] **AND PROCEDURAL HISTORY**

In 2010, Defendant, a home respiratory services and medical equipment provider, Def.'s Br. 1, brought Plaintiff, an African American male, on as a temporary worker and later hired him as a full-time employee based on the quality of his work. Am. Compl. ¶ 7. Plaintiff was a "filler," whose job responsibilities included filling cylinders with liquid oxygen, a product regulated by the United States Food and Drug Administration ("FDA"). Def.'s Br. 1. Plaintiff alleges discrimination by his supervisors, including: (1) not allowing non-white employees to use the bathrooms outside of breaks without special permission (while white employees were free to use them); (2) reprimanding non-white employees for speaking during working hours (while white employees were free to speak); and (3) requiring non-white employees to change into work gear before clocking in while allowing white employees to clock in before changing. Am. Compl. ¶ 8

After becoming a full-time employee, Plaintiff complained of the discriminatory behavior to his supervisor, who told Plaintiff that "if he didn't like the rules that he should leave." Id. ¶ 10. Plaintiff claims that in November 2010 he was

---

[1]      In accordance with the appropriate standard of review for motions for summary judgment, the Court views the facts in the light most favorable to Plaintiff as the nonmoving party.

called a "monkey" by a coworker but supervisors took no action. Id. ¶ 12. In June 2011 Plaintiff submitted an electronic workplace survey complaining of discrimination and insufficient advancement opportunities. Id. ¶ 13. In July 2011, allegedly due to his survey comments and the quality of his work, he was promoted to a position of greater responsibility. Id. ¶ 14. Throughout this time, Defendant's employees continued their discriminatory conduct, about which Plaintiff complained to his supervisors periodically. Id. ¶ 16.

"On or about September 4, 2012, Plaintiff was called into the supervisor's office, where he was informed that he had made record-keeping mistakes and that he was discharged." Id. ¶ 17. Plaintiff allegedly requested to see the mistakes, but his supervisor denied his request and ordered him to leave the premises. Id. ¶¶ 18-19. Plaintiff believes that these mistakes were pretextual and his termination actually resulted from unlawful racial discrimination and retaliation. Id. ¶ 22.

Accordingly, Plaintiff's pleads the following claims: hostile work environment (Count I),[2] unlawful termination (Count II), and retaliation (Count III). Id. ¶¶ 25-27. On July 19, 2013, Plaintiff filed his Complaint (ECF No. 1) in federal

---

[2]    In his response to Defendant's Motion for Summary Judgment, Plaintiff withdraws his hostile work environment claim. Pl.'s Br. 12. The Court will not consider it further.

court, which he amended on August 22, 2013 (ECF No. 3). On
October 11, 2013, Defendant filed its Amended Answer. ECF No.
10. After obtaining discovery, Defendant filed a Motion for
Summary Judgment on August 21, 2014 (ECF No. 18), to which
Plaintiff responded on September 15, 2014 (ECF No. 19). The
motion is ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion
for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact." Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A
fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." Anderson, 477 U.S. at
248.

The Court will view the facts in the light most
favorable to the nonmoving party. "After making all reasonable
inferences in the nonmoving party's favor, there is a genuine

issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## III. DISCUSSION

### A.   Unlawful Termination

#### 1.   Legal Standard

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts," including employment contracts. Patterson v. McLean Credit Union, 491 U.S. 164, 172 (1989), superseded in part on other grounds by 42 U.S.C. § 1981(b). This statutory prohibition includes "post-contract-formation conduct," such as unlawful termination or other adverse actions that may occur during an employee's tenure. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 451 (2008).

"In order to prevail under § 1981, a plaintiff must prove purposeful discrimination," Patterson, 491 U.S. at 186--discriminatory intent by another name. Here, Plaintiff offers no direct evidence of such intent, but rather relies on indirect

evidence.[3] Where only indirect evidence is available, courts analyze § 1981 discrimination claims according to the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Patterson, 491 U.S. at 186.

Under McDonnell Douglas, the plaintiff must first make out a prima facie case of discrimination by establishing four factors: (1) he belongs to a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214

---

[3]     Plaintiff believes the evidence in this case is strong enough to support a mixed-motivation theory under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), superseded by statute as recognized by Burrage v. United States, 134 S. Ct. 881 (2014). In order to so proceed, Plaintiff must clear a "high hurdle" by offering evidence "strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision," as well as evidence "connected to the decision being challenged by the plaintiff." Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 269 (3d Cir. 2010) (alteration in original) (internal quotation marks omitted). Here, Plaintiff admits he does not know if Defendant had a discriminatory motive when it terminated him. Def.'s Br. Ex. B, Ponsford Doe Dep. 264:15-265:11, June 26, 2014. As discussed below in the context of the retaliation claim, the only direct statement pertinent to his employer's alleged animus (i.e., "if you don't like the way we operate things here, you can find another job or you can quit," Pl.'s Br. 3) cannot be causally linked to the termination. Accordingly, Plaintiff's evidence is circumstantial in nature and the Court properly evaluates it under the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), rather than under the mixed-motivation framework.

(3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at 802). The
burden of establishing a prima facie case need not be onerous,
as its purpose is simply "to eliminate the most obvious, lawful
reasons for the defendant's action." Pivirotto v. Innovative
Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999). Nevertheless, that
purpose is important, and a plaintiff must present evidence of
each element in order to obtain relief. Tex. Dep't Cmty. Affairs
v. Burdine, 450 U.S. 248, 253-54 (1981).

Second, once the plaintiff has established his prima
facie case, the burden of production shifts to the defendant
employer to "articulate some legitimate, nondiscriminatory
reason for the employee's rejection." McDonnell Douglas, 411
U.S. at 802; see also Burdine, 450 U.S. at 255 ("It is
sufficient if the defendant's evidence raises a genuine issue of
fact as to whether it discriminated against the plaintiff.");
Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir.
2010) (noting that defendant only has a burden to produce a
legitimate reason, and that "defendant need not even prove that
the tendered reason was the actual reason for its behavior").

Finally, if the employer is able to provide a reason,
the plaintiff must now show that the proffered reason is merely
a pretext. McDonnell Douglas, 411 U.S. at 805. The plaintiff
must provide rebutting evidence which would allow a "factfinder
reasonably to infer that each of the employer's proffered non-

7

discriminatory reasons was either a post hoc fabrication or
otherwise did not actually motivate the employment action."
Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citation
omitted). The plaintiff can satisfy her burden at the summary
judgment stage by "demonstrat[ing] such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions" in the employer's explanation for its action
"that a reasonable factfinder could rationally find them
'unworthy of credence.'" Id. at 765 (quoting Ezold v. Wolf,
Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).
Notably, "throughout this burden-shifting paradigm the ultimate
burden of proving intentional discrimination always rests with
the plaintiff." Id. at 763.

> 2.   Analysis

Here, as is typical, the first three elements of
Plaintiff's prima facie case are undisputed. First, Plaintiff,
as an African American, is a member of a protected class under
§ 1981. Second, his performance evaluations indicate that he was
a satisfactory worker. See Def.'s Br. Ex. F (showing an overall
performance of "achieves expectations" for 2010-2011); id. Ex. G
(showing an overall performance of "achieves expectations +" for
2011-2012). Third, Plaintiff was terminated on September 4,

2012. See id. Ex. N (showing Plaintiff's Termination Corrective Action Plan).

Plaintiff advances several arguments in order to show causation, the fourth element. He describes a work environment in which black employees were held to work rules that white employees could violate with impunity. Pl.'s Br. 13. He submits that the error for which he was terminated "remains completely unexplained." Id. He contends that Defendant never formally investigated the incident that led to his termination, in violation of internal and FDA regulations. Id. Finally, he argues that the incident implicated a similarly situated white coworker who was not terminated. Id. at 13-14.

Because most of Plaintiff's arguments for causation are bound up with Defendant's explanation of the incident, the Court assumes arguendo that Plaintiff's evidence establishes a prima facie case of discrimination and proceeds to the next step in the McDonnell Douglas analysis, in which the Court determines whether Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's termination. McDonnell Douglas, 411 U.S. at 802.

According to Defendant, Plaintiff was terminated for "his careless mislabeling of over 630 FDA-regulated oxygen cylinders and Fill Logs," a mistake which "exposed Apria to significant liability." Def.'s Br. 36; see also id. Ex. M

(Termination of Employment for Cause memorandum); id. Ex. A, Supervisor William Crocker Dep. 265:20-266:10, June 16, 2014. Defendant states that Plaintiff's errors were well documented, see id. Ex. I (oxygen fill records); id. Ex. K (building operations manager's notes); id. Ex. M (Termination of Employment for Cause memorandum), and the Human Resources Director--who did not know Plaintiff--reviewed the documentation and approved the termination, see id. at 36; see also id. Ex. L, Human Resources Director John Coleman Dep. 20:10-15, 32:16-34:2, 54:21-56:18, July 7, 2014; id. Ex. B, Ponsford Doe Dep. 264:17-20, June 26, 2014. According to Plaintiff's supervisor and others involved, Plaintiff's mistake was of sufficient magnitude to justify his termination. See id. at 37; Crocker Dep. 241:1-2 ("In 24 years I never seen nothing of this magnitude."); see also id. Ex. J, Building Operations Manager Ronnie Edward Smith Dep. 65:6-10, June 20, 2014; id. Ex. C, Quality Control Unit employee Joseph Vitellaro Dep. 188:2-7, June 25, 2014.

Because Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, the Court proceeds to evaluate whether this reason is a pretext and whether unlawful discrimination is the real reason for the termination. McDonnell Douglas, 411 U.S. at 805. At this final stage of the McDonnell Douglas framework, Plaintiff "has 'the full and fair opportunity to demonstrate' . . . 'that the

10

proffered reason was not the true reason for the employment decision,' and that [a discriminatory reason] was." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (quoting Burdine, 450 U.S. at 255 n.10, 256). At the pretext stage, the Court's "factual inquiry proceeds to a new level of specificity." Burdine, 450 U.S. at 255.

Plaintiff advances his pretext argument by alleging inconsistencies in the circumstances surrounding his termination,[4] particularly Defendant's decision to merely reprimand a similarly situated white employee. Plaintiff contends that Joseph Vitellaro, a white male, also bore responsibility for the error because he was the only Quality Control Unit employee on duty at the time, but that Vitellaro merely received a written warning. Pl.'s Br. 14, 18; see also Def.'s Br. 12 (noting Vitellaro received a "Final Written Warning"). Plaintiff thus attempts to show pretext by

_____

[4]      These inconsistencies include the improbability of the error occurring in the way Defendant describes it, the ability of Plaintiff's supervisor to influence Human Resource's approval of the termination, Defendant's inadequate post-incident investigation, Defendant's failure to initially report Vitellaro's involvement in the incident, and Defendant's racially discriminatory work environment. Pl.'s Br. 13-14, 17-18. While a perusal of the record indicates that Plaintiff at times overstates the evidence supporting these claims, they may yet reinforce his position. In any event, the Court will not consider these arguments as the similarly situated evidence described in the main text below is sufficient for Plaintiff to withstand summary judgment on this claim.

demonstrating that Defendant "has treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998). "Although [the Third Circuit] has not explicitly stated what constitutes a similarly situated employee, we accept the standard used by other circuits that to be considered similarly situated, comparator employees must be similarly situated in all relevant respects." Wilcher v. Postmaster Gen., 441 F. App'x 879, 881-82 (3d Cir. 2011) (citing Russell v. Univ. of Toledo, 537 F.3d 596 (6th Cir. 2008); Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-61 (5th Cir. 2009)).[5] In Lee, the Fifth Circuit held that employees are similarly situated in all relevant respects when they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." 574 F.3d at 260. "And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of

---

[5]       The Third Circuit has stated generally that, when determining whether an employee is similarly situated, a court "must look to the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace. This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004).

the proffered comparator who allegedly drew dissimilar employment decisions." Id.

Here, Plaintiff offers a number of reasons for why he and Vitellaro were similarly situated. Although they held different positions, with Vitellaro in Quality Control and Plaintiff a filler, Vitellaro's duties substantially overlapped with Plaintiff's. See Pl.'s Br. 14; see also id. Ex. G, Quality Control Unit employee Robert Keith Simpkiss Dep. 35:10-14, June 25, 2014 ("The QCU was supposed to go and check every run. Approximately about every three runs the QCU goes, and goes through every run double checking them."); Doe Dep. 176:8-22 (noting that the filler and Quality Control "work[ed] hand in hand"); Vitellaro Dep. 164:6-10 ("[Q.] And it's true, is it not, that on occasions when you worked with Ponsford Doe that you would also batch stamp cylinders? A. Yeah, we would all help."). In addition, Crocker appears to have supervised both Plaintiff and Vitellaro, or at least have had the power to discipline or terminate them. See, e.g., Vitellaro Dep. 102:8-104:12 (stating that Crocker wrote Vitellaro up after the incident occurred and warned him that he would be fired if it happened again); Def.'s Br. Ex. M (showing that Crocker signed Plaintiff's termination memorandum). Both employees appear to have had similar disciplinary histories. See, e.g., Vitellaro Dep. 104:8-12 ("Q. Was that the first time that you were made aware that you had

made mistakes? A. That, yeah, that's the first time as a QCU, I'm pretty sure."); Def.'s Br. Exs. F, G (rating Plaintiff's performance as at least "achieves expectations" from 2010-2012). Finally, although Plaintiff had primary responsibility for filling the tanks, the "filling record could not be completed by the filler alone, and was not valid until each individual line was reviewed and signed by the QCU." Pl.'s Br. 5; see also Crocker Dep. 191:12-19 ("Q. As [Plaintiff's] doing it, once he has completed all of the work that he's done, he cannot release the tanks, can he? A. Correct. Q. Well, the only person who can release that is someone who is QCU. A. Correct.").

Defendant argues that Vitellaro was not similarly situated to Plaintiff because the Quality Control and filler positions are distinct, Vitellaro was still in training at the time of the incident, Vitellaro missed the error but did not cause it, and the scope of his job responsibilities included "oversee[ing] the whole shift and [making] sure the work was performed efficiently and without incident." Def.'s Br. 31-32. Defendant believes these differences properly account for the differing degrees of discipline meted out to Plaintiff and Vitellaro. Id. at 32.

While it is true that both employees appear superficially distinct, it is not clear that the substance of their duties materially diverged with respect to the incident at

14

issue. As Plaintiff shows, the positions had a large amount of overlap, with the Quality Control employee often performing the job duties of the filler. Moreover, it appears that the final product was the result of both employees' collaborative efforts, particularly since Quality Control must inspect and sign off on the filler's work before the oxygenated tanks could leave the facility. Finally, both employees reported to the same supervisors and had similar disciplinary histories at the company. On this evidence, a reasonable jury could find the two to be "comparator employees [who are] similarly situated in all relevant respects." Wilcher, 441 F. App'x at 882.[6]

For the reasons given above, Plaintiff has offered sufficient evidence regarding the circumstances of his termination--and especially Vitellaro's status as an appropriate comparator--to meet his burden at the pretext stage. Viewing the

---

[6]     See also, e.g., McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004) ("As a general rule, whether individuals are similarly situated is a factual question for the jury. However, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." (citation omitted)); accord Heller v. Elizabeth Forward Sch. Dist., 182 F. App'x 91, 95 (3d Cir. 2006) (holding that the district court "did not err in denying the motion for summary judgment and concluding that whether the jobs are similarly situated is a fact issue appropriate for the jury"); Oliver v. Clinical Practices of Univ. of Pa., 921 F. Supp. 2d 434, 448 (E.D. Pa. 2013) (holding that the plaintiff "has not presented sufficient evidence for a jury to conclude that [a potential comparator] was similarly situated").

evidence in the light most favorable to Plaintiff as the
nonmoving party, the Court finds that he has raised a genuine
dispute as to a material fact on the pretext question and will
therefore deny Defendant's motion for summary judgment as to the
unlawful termination claim. Pignataro, 593 F.3d at 268.

    B.   Retaliation

        1.  Legal Standard

      In CBOCS West, the Supreme Court held that § 1981
encompasses retaliation claims. 553 U.S. at 457. Therefore, the
Court's analysis proceeds as it would for a Title VII
retaliation claim. Because Plaintiff offers no direct evidence
of retaliation,[7] the Court will evaluate his claim under the
McDonnell Douglas burden-shifting framework. Anderson, 621 F.3d
at 270. Although the second and third steps of this framework
follow those the Court uses in the discrimination context, the
first step differs slightly. Thus, in order for a plaintiff to
establish a prima facie case of retaliation, he "must tender
evidence that: '(1) []he engaged in activity protected by Title
VII; (2) the employer took an adverse employment action against
h[im]; and (3) there was a causal connection between h[is]
participation in the protected activity and the adverse

---

[7]     See supra note 3, which applies with equal force to
Plaintiff's retaliation claim.

employment action.'" <u>Moore v. City of Phila.</u>, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting <u>Nelson v. Upsala Coll.</u>, 51 F.3d 383, 386 (3d Cir. 1995)). An "adverse employment action" in this context is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

    2.  <u>Analysis</u>

For the purposes of summary judgment, the parties do not dispute that Plaintiff has satisfied the first two elements of his prima facie case. First, Plaintiff asserts that, since he was hired as a full-time employee in June 2010, he complained "several times a month" to his supervisor Crocker about race-based unequal treatment in the workplace. Pl.'s Br. 2; <u>see also</u> Doe Dep. 108:21-116:2. Crocker's alleged typical response to these complaints was that "if you don't like the way we operate things here, you can find another job or you can quit." Pl.'s Br. 3; <u>see also</u> Doe Dep. 109:15-19. Sometime before July 15, 2011, Plaintiff submitted a computerized survey in which he complained of the unequal treatment at his workplace. <u>See</u> Doe Dep. 99:19-101:6. Finally, in November 2011, Plaintiff also complained to Building Operations Manager Smith. Pl.'s Br. 3; <u>see also</u> Doe Dep. 225:5-16. Defendant concedes that these events

occurred and that they constituted protected activity.[8] <u>See</u> Def.'s Br. 33-34. Second, there is no dispute that Plaintiff was terminated on September 4, 2012.

Regarding the third element, causal connection, Plaintiff points to Crocker's frequent comment that "if you don't like the way we operate things here, you can find another job or you can quit," and also generally restates the arguments he made in the context of his unlawful termination claim. Pl.'s Br. 15-16. Defendant disputes that Plaintiff's termination had anything to do with complaints that Plaintiff might have made. Def.'s Br. 34-35. Defendant also notes the temporal distance between many of Plaintiff's complaints and his termination, and that "nothing changed about the nature or frequency of [Plaintiff's] complaints" around the time of the termination. <u>Id.</u> at 34.

The Third Circuit allows a plaintiff to "rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against

---

[8]    The fact that the majority of these complaints appear to be informal does not alter the Court's analysis, as the Third Circuit does not "require a formal letter of complaint to an employer or the EEOC as the only acceptable indicia of the requisite 'protected conduct.'" <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 702 (3d Cir. 1995); <u>see also</u> <u>id.</u> (discussing this proposition in the context of a claim under the Age Discrimination in Employment Act, but relying on <u>Sumner v. U.S. Postal Serv.</u>, 899 F.2d 203, 209 (2d Cir. 1990), a Title VII case).

him." Marra v. Phila. Hous. Auth., 497 F.3d 286, 302 (3d Cir.
2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271,
284 (3d Cir. 2000)). "In certain narrow circumstances, an
unusually suggestive proximity in time between the protected
activity and the adverse action may be sufficient, on its own,
to establish the requisite causal connection." Id. (internal
quotations marks omitted). On the other hand, the "mere passage
of time is not legally conclusive proof against retaliation."
Id. (quoting Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892,
894 (3d Cir. 1993)) (internal quotation marks omitted). A court
may need to assess other factors as well. For example,

> [w]here the time between the protected activity and
> adverse action is not so close as to be unusually
> suggestive of a causal connection standing alone,
> courts may look to the intervening period for
> demonstrative proof, such as actual antagonistic
> conduct or animus against the employee, or other types
> of circumstantial evidence, such as inconsistent
> reasons given by the employer for terminating the
> employee or the employer's treatment of other
> employees, that give rise to an inference of causation
> when considered as a whole.

Id. (citation omitted). In any event, a plaintiff "cannot
establish that there was a causal connection without some
evidence that the individuals responsible for the adverse action
knew of the plaintiff's protected conduct at the time they
acted." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d
Cir. 2015).

Here, it cannot be disputed that the "individuals responsible for the adverse action knew of [Plaintiff's] protected conduct," id., since the complaints were primarily directed to them. Looking at Plaintiff's evidence as a whole, however, it is clear that he has not sufficiently established a causal link between his complaints and his termination. The latest discrete complaint occurred in November 2011, when Plaintiff spoke to Smith. The fact that he was terminated approximately ten months later does not constitute an inference-creating temporal proximity. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months . . . [,] without more, cannot create an inference of causation and defeat summary judgment."). On the other hand, Plaintiff's more regular complaints to Crocker do seem to be temporally proximate to his termination. However, any inference to be drawn from temporal proximity weakens considerably once it is noted that Plaintiff complained regularly for over two years, during which time--and allegedly partially on the basis of his complaints--he was promoted to a position of increased responsibility. See Am. Compl. ¶ 14; Pl.'s Br. 4. In this context, Crocker's alleged frequent comment suggesting that Plaintiff quit if he did not

like the work environment also fails to support an inference of
causation.

Receiving no support from temporal proximity,
Plaintiff must base his retaliation claim on other
"demonstrative proof, such as actual antagonistic conduct or
animus against the employee, or other types of circumstantial
evidence" supporting an inference of causation. Marra, 497 F.3d
at 302 (citation omitted). As noted above, Plaintiff here relies
on the arguments he made in the unlawful termination context.
Although he successfully avoided summary judgment on that claim,
he cannot do so here. Any alleged inconsistencies in Defendant's
handling of the termination and any disparate treatment between
Plaintiff and Vitellaro as a white comparator may raise a
genuine dispute as to a material fact regarding whether
Defendant improperly terminated Plaintiff based on racial
discrimination. However, Plaintiff's discrimination and
retaliation claims cannot be collapsed into one conceptual
claim, especially if there is a lack of evidence that
Plaintiff's protected conduct prompted the adverse action. Here,
Plaintiff was promoted during the period in which he engaged in
protected activity: this effectively precludes any inference to
be drawn from the circumstances surrounding his discrimination

claim.[9] Moreover, as Defendant observes, Plaintiff appears to allege no change in the nature of or response to his regular complaints over the relevant time period. See Doe Dep. 200:2-6 ("Q. Did anything change about the nature of your complaints around August [2012]? A. When I complained, you know, he will listen. Sometimes it would cease. Sometimes it would go back to where it was."). Therefore, Plaintiff fails to show a causal connection between the protected activity and his termination, and cannot satisfy the third element of his prima facie case.

In sum, Plaintiff has not offered "evidence that is sufficient to convince a reasonable factfinder to find all of the elements of a prima facie case," Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (citing Hicks, 509 U.S. at 506), and he therefore cannot succeed on his retaliation claim against Defendant. Accordingly, the Court will grant Defendant's motion for summary judgment on this claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff's

---

[9]     Plaintiff does argue generally that he was subject to a racially discriminatory work environment. Pl.'s Br. 15. However, because he has not shown that he was personally adversely affected by this environment (to the contrary, he was promoted), this argument does not persuade.

retaliation claim and will deny the motion as to Plaintiff's unlawful termination claim. An appropriate order follows.